Mark H. Ralston
State Bar No. 16489460
Fishman Jackson Ronquillo PLLC
Three Galleria Tower
13155 Noel Road, Suite 700
Dallas, TX 75240
Telephone: (972) 419-5544
Facsimile: (972) 419-5500
E-mail: mralston@fjrpllc.com

Counsel for Debtor and Debtor-in-Possession
Completion Industrial Minerals, LLC

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § § § | Chapter 11 |
| COMPLETION INDUSTRIAL MINERALS, LLC, | § § § § | Case No. 17-43208-elm-11 |
| Debtor. | § | |

### DEBTOR'S MOTION FOR ORDER
### CONFIRMING DEBTOR'S LIQUIDATING PLAN

TO THE HONORABLE EDWARD LEE MORRIS,
UNITED STATES BANKRUPTCY JUDGE:

> **NO HEARING WILL BE CONDUCTED HEREON UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT (ADDRESS OF CLERK'S OFFICE) BEFORE CLOSE OF BUSINESS ON JUNE 25, 2019, WHICH IS AT LEAST 28 DAYS FROM THE DATE OF SERVICE HEREOF.**
>
> **ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK, AND A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN. IF A RESPONSE IS FILED A HEARING MAY BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY.**
>
> **IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED MAY BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN.**

Completion Industrial Minerals, LLC ("**CIM**"), as Debtor and Debtor-in-Possession in the above styled and captioned bankruptcy case (the "**Bankruptcy Case**"), moves for an order under Section 1129(a) of the Bankruptcy Code, confirming the Debtor's Liquidating Plan (the "**Plan**").[1]

## I. SUMMARY

1. After significant efforts to restructure or liquidate through equity, enterprise and asset sales, CIM has succeeded in selling almost all of its assets and, in doing so, has recovered sums that have permitted CIM not only to pay in excess of $2 million in secured tax and non-tax debt, as well as some unsecured debt, but to retain sufficient cash after those payments to satisfy administrative priority claims, remaining secured claims, and all priority and general unsecured claims *in full*. The Plan provides for those claims to be paid in full. And because the Plan does not impair any class of creditors, it is unnecessary for CIM to solicit acceptances of any class of creditors.

2. The Plan also provides for a mechanism to expedite the claims allowance and payment process. Plan Section 5.9 and Plan Schedule 5.9 provides for the treatment of claims by providing for: (a) the allowance of certain claims in the nature, priority and amount such claims as either scheduled by CIM or in the amount asserted by the claimant if a proof of claim has been filed; (b) the adjustment of certain other claims regarding the nature, priority or amount of those claims to account for, among other things, the partial of full satisfaction of those claims post-petition or based upon CIM's further determination after additional investigation; and (c) the disallowance of claims that have been fully satisfied post-petition.. The Plan further provides

---

[1] A true and correct copy of the Liquidating Plan is attached hereto as Exhibit "A".

that creditors may elect to opt out of the claims resolution process provided under Plan Section 5.9, with those claims being subject to resolution as a disputed claim under the terms of the Plan.

## II. JURISDICTION AND STATUTORY AUTHORITY[2]

3. This Bankruptcy Court has jurisdiction over the Bankruptcy Case and this motion pursuant to 28 U.S.C. §§ 157 and 1334. The proceeding initiated by the filing of this motion constitutes a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of the Bankruptcy Case in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The basis for the relief requested by CIM is Bankruptcy Code Sections 105(a), and 1121 through 1129, and Bankruptcy Rules 2002.

## III. FACTUAL BACKGROUND

4. CIM is a Delaware limited liability company headquartered in Fort Worth, Texas. During the time it was in active operations, CIM produced Northern Alpha Quartz proppant (commonly referred to as "frac sand") for industrial use by (among others) oil and gas producers in oil and gas drilling.

5. CIM's operations were largely conducted at its Marshfield, Wisconsin industrial sand processing site (the "**Marshfield Site**"). CIM owned fee title to the real property and improvements comprising the Marshfield Site, as well as other tangible assets related to the operations of that facility, including removable fixtures, equipment and information systems. Additionally, CIM owned approximately 200 acres of unimproved real property located near the Marshfield Facility containing significant sand reserves (the "**Polish Road Farm**").

---

[2] Unless otherwise indicated, all statutory references shall be to the United States Bankruptcy Code, Title 11 United States Code (the "**Bankruptcy Code**").

6. Largely as a result of low industrial sand prices in the 2016 time-period, CIM was unable to achieve consistent profitability. Consequently, and despite capital contributions and/or loans from certain affiliated parties, it became financially unviable for CIM to continue its operations. Accordingly, around May 2016, CIM shuttered its sand processing facility. Soon thereafter, CIM began actively seeking to restructure by securing new equity investors.

7. CIM commenced this bankruptcy case on August 1, 2017, to avoid a foreclosure sale on the Marshfield Site by certain trade creditors that had secured judgment liens against it. After the bankruptcy filing, CIM and its members (the "**CIM Members**") continued their efforts to restructure CIM through the sale of the CIM Members' equity interests to a new owner under terms that would provide for the recapitalization of CIM so that CIM could pay its existing debts.

8. Based on interest expressed by several prospective equity purchasers, CIM and the CIM Members continued their equity restructuring efforts for several months post-petition. Despite significant efforts, however, CIM was unable to secure an equity purchaser. Facing continued costs from having to maintain its assets, CIM and the CIM Members then determined that CIM should expand its restructuring efforts by seeking to sell all or a portion of the CIM's real and personal property assets through a sealed-bid public auction. Consistent with that determination, CIM moved for and obtained approval of a sale process.[3] CIM proceeded to conduct a sealed-bid auction as approved by this Bankruptcy Court. But although CIM received several sealed bids that were acceptable in amount, none of those bids met the requisite

---

[3] *See Motion for Order (I) Authorizing Sealed Bid Procedures for Sale of Debtor's Assets Outside the Ordinary Course of Business; (II) Approving Procedures for the Assumption and Assignment of Executory Contracts and Leases; (III) Approving Sale to Highest and Best Bidder(s) Free and Clear of Liens, Claims and Encumbrances; and (IV) Approving the Assignment of Designated Executory Contracts and Leases* [Doc 63], filed on February 16, 2018, and the related *Agreed Order (I) Approving Sealed Bid Sale Procedures, (II) Approving Procedures for the Assumption and Assignment of Executory Contracts and Leases, and (III) Scheduling Hearing on Approval of Sale and the Assumption and Assignment of Designated Executory contracts and Leases* [Doc 78], entered on March 20, 2018.

requirements to be considered as qualified bids, generally due to the bidders' inability both to post the requisite bid deposit and to commit to closing on the proposed sale. And despite CIM's subsequent efforts to assist those bidders in addressing issues that prevented their bids from meeting material bid qualification requirements (such as providing the bidders with information concerning CIM's operations and assets to assist those bidders in obtaining necessary financing), ultimately no bidder was able to close on any otherwise acceptable bid.

9. Despite those setbacks, CIM still continued its efforts to find a buyer for its assets. CIM's determination eventually paid off. CIM first secured a buyer for its sand processing plant, which CIM sold with bankruptcy court approval for approximately $5 million.[4] CIM then secured a buyer for its Marshfield Site (without the sand processing plant)—a sale made all the more complex because that property was subject to restrictions and possible purchase options provided under a Development Agreement between CIM and the City of Marshfield. Working with the proposed buyer and the City of Marshfield, CIM was able to negotiate acceptable terms of the sale, resulting in gross sale proceeds to CIM of approximately $2.5 million.[5] And most recently, CIM has closed on sales of its rolling stock and of a residential home situated on a portion of Polish Road Farm, adding over $300,000 (net of brokerage fees) to CIM's coffers.[6]

---

[4] *See Agreed Order Granting Debtor's Motion to Sell Assets Outside the Ordinary Course of Business, to Lease Real Property, and to Pay Secured* Debt [Doc 111], entered on July 16, 2018.

[5] *See Amended Order Authorizing Private Sale of Industrial Site and Related Assets to Mathy Construction Company* [Doc 186], entered February 27, 2019.

[6] *See Order Authorizing the Private Sale of Real Property Outside the Ordinary Course of Business* [Doc 169], entered on January 31, 2019; *Order Authorizing Private Sale of Debtor's Rolling Stock to Nitke, Inc.* [Doc 213], entered on March 29, 2019.

10. CIM has also taken the opportunity to use the proceeds of certain asset sales to satisfy approximately $2 million of various tax and non-tax over-secured debt[7] By doing so, CIM has been able to avoid the continued accrual of interest on that over-secured debt.

11. As reflected in its most recent Monthly Operating Report for April 2019 [Doc 224], CIM has cash assets of approximately $5.4 million.[8] CIM estimates current post-petition liabilities (secured and unsecured) of approximately $1 million, and remaining pre-petition liabilities of approximately $3 million, leaving an estimated cash surplus for potential payment to equity holders of approximately $1.4 million (less future administrative expenses, but not including additional recoveries from the sale of remaining non-cash assets).

### IV. THE PLAN

12. The Plan provides generally as follows:[9]

   a. <u>Administration</u>. CIM, as Liquidating Debtor, shall implement the Plan. CIM shall appoint a Plan Administrator to execute the duties and obligations provided under the Plan, with oversight from an Executive Committee (comprised of CIM's Board of Members as of the Effective Date).[10]

---

[7] *See Agreed Order Granting Debtor's Motion to Sell Assets Outside the Ordinary Course of Business, to Lease Real Property, and to Pay Secured* Debt [Doc 111], entered on July 16, 2018; *Order Granting Debtor's Motion under Bankruptcy Rule 9019 to Approve Compromise Agreement with the City of Marshfield* [Doc 184], entered on February 25, 2019..

[8] CIM still owns the approximately 190 acres of land at the Polish Road Farm, which is CIM's only remaining material non-cash asset.

[9] This summary is not intended as a verbatim rendition of the actual terms of the Plan. To the extent that there is any conflict between this summary and the actual terms of the Liquidating Plan, the terms of the Liquidating Plan shall control.

[10] *See Plan* § 5.1 at 13.

  b. <u>Claims Administration</u>. Unless creditors determine to opt-out, the treatment of claims will be established as provided in Section 5.9 of the Plan, as that provision references and incorporates Plan Schedule 5.9. If a creditor elects to opt-out of the procedure established under Section 5.9, the claim will be deemed a "Disputed Claim" and subject to objection by CIM and resolution by this Bankruptcy Court.[11]

  c. <u>Claims Distributions</u>. All claims as allowed under Section 5.9 will be in accordance with the priority of distribution. All claims that are allowed claims as of the Effective Date, as provided under Section 5.9 of the Plan and Schedule 5.9 thereto, will be paid within fifteen (15) days of the Effective Date.[12]

  d. <u>Executory Contacts and Unexpired Leases</u>. All executory contracts and unexpired leases (if any) shall be rejected as of the Effective Date. Any claim for rejection damages shall be filed within thirty (30) days of the Effective Date.[13]

  e. <u>Administrative Claims</u>. All administrative claims, including professional claims, but excepting certain administrative claims that have been previously allowed, or which have arisen in the ordinary course of business or which constitute fees of the United States Trustee, shall be payable on application filed within thirty days following the Effective Date.[14]

### V. APPLICABLE AUTHORITY

13. As an initial matter, CIM has standing to propose this Plan.[15]

---

[11] *See Plan* § 5.9 at 15.

[12] *See Plan* §§ 4.1-4.5 and 5.9 at 11-13, 15.

[13] *See Plan* § 5.8 at 14-15.

[14] *See Plan* §§ 3.1-3.2 at 9-10.

[15] *See* Section 1121(a).

14. The Plan also contains all provisions required under the Bankruptcy Code of CIM, including the following:[16]

    a. Designating classes of claims and specifying which classes are unimpaired.

    b. Providing for the same treatment of creditors within each class of claims.

    c. Providing for the adequate means of implementing the Plan.

    d. Providing for a selection of officers that are consistent with the interests of creditors and equity holders.

15. Furthermore, because the Plan does not alter the legal, equitable or contractual rights of creditors and interest holders, no class is "impaired" under the Plan.[17] And because no class of creditors or interest holders is "impaired" under the Plan, confirmation of the Plan does not require acceptance of the Plan by any creditor or interest holder class.[18] Accordingly, CIM is not required to undertake obtaining acceptance of the Plan through the process of solicitation by approved disclosure statement.[19]

16. In addition to meeting Bankruptcy Code requirements that permit it to avoid having to obtain creditor or interest holder acceptance, the Plan meets all other applicable Section 1129(a) requirements for confirmation.[20] In addition, because the Plan provides that all creditors and interest holders are "unimpaired", CIM is not required to demonstrate the elements required under Section 1129(b) for "cramdown" of the Plan as to any non-accepting class of creditors or interest holders.[21]

17. In short, the Plan meets all requirements for confirmation. Moreover, the Plan provides a fair and efficient mechanism for CIM to establish the allowed amount, priority and

---

[16] *See* Section 1123(a).

[17] *See* Section 1124(1).

[18] *See* Section 1129(a)(8).

[19] *See* Section 1125(b).

[20] *See* Section 1129(a)(1)-(5), (9)(A) and (B), (11), and (12).

[21] *See* Section 1129(b)(1).

nature of creditor claims, and to pay those claims in full without undue delay or expense. According, the Plan should be confirmed.

## VI.  REQUEST FOR RELIEF

For the foregoing reasons, CIM requests that the Court, after notice and an opportunity for objection, enter an order confirming the Debtor's Liquidating Plan and grant any and all other relief to which CIM may be entitled.

Dated: the 26th day of May, 2019.

Respectfully submitted,

 /s/ Mark H. Ralston
Mark H. Ralston
State Bar No. 16489460
Fishman Jackson Ronquillo PLLC
Three Galleria Tower
13155 Noel Road, Suite 700
Dallas, TX 75240
Telephone: (972) 419-5544
Facsimile: (972) 419-5501
E-mail: mralston@fjrpllc.com

COUNSEL FOR DEBTOR COMPLETION INDUSTRIAL MINERALS, LLC

## CERTIFICATE OF SERVICE

This is to certify that the undersigned caused a true and correct copy of the foregoing document to be served on the parties listed on the attached service list by First Class United States Mail and on all persons receiving electronic notice of filings in this case through the ECF system, on this, the 26th day of May, 2019.

 /s/ Mark H. Ralston
Mark H. Ralston